IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SCHERONDA COPLEN, as next friend ) | |
| o/b/o EARL COPLEN ) | |
| ) | |
| v. ) | No. 3:08-0956 |
| ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:    The Honorable John T. Nixon, Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, ordering cessation of the childhood supplemental security income ("SSI") benefits previously awarded Earl Coplen pursuant to Title XVI of the Social Security Act ("the Act").  The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 24), to which defendant has responded with its own motion for judgment on the administrative record (Docket Entry No. 28); also pending is plaintiff's motion to correct transcript (Docket Entry No. 32).  Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 18),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be GRANTED, that defendant's motion for judgment be DENIED, that plaintiff's motion to correct transcript be DENIED as moot, and that the

---
[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

1

decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this report.

## I. Introduction

Born on August 21, 2000, Earl Coplen was delivered prematurely, suffering several birth defects. (Tr. 173-76) Earl's mother, plaintiff Sheronda Coplen, shortly thereafter filed an application on Earl's behalf for childhood SSI. (Tr. 72-74) This claim was approved on October 24, 2000, and Earl was awarded benefits based on his functional equivalence to the criteria of § 104.06H of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 41, 186-89)

In 2005, SSA initiated a Continuing Disability Review ("CDR") to determine whether Earl continued to be disabled. (Tr. 102-27) As a result of this review, on April 17, 2006, plaintiff was notified that Earl's benefits would cease, due to his failure to attend two scheduled examinations and the resulting lack of current medical evidence to sustain the continuing SSI award. (Tr. 44-46, 48) Plaintiff promptly filed for reconsideration of this decision, but waived hearing of the matter and requested a decision on the papers alone; the cessation decision was affirmed on reconsideration, upon a finding that Earl's disability ceased effective April 17, 2006. (Tr. 51-58)

Plaintiff thereafter requested and received a de novo hearing of the case by an Administrative Law Judge ("ALJ"). The hearing was held on Feburary 26, 2007, when plaintiff appeared without representation and was the only witness. (Tr. 304-27) Earl Coplen, then six years old, was not present at the hearing; plaintiff stated that "[t]hey told me he could go to school." (Tr. 306) The ALJ confirmed plaintiff's desire to waive her right

2

to representation at the hearing. (Tr. 308-09) Subsequent to the hearing, the ALJ ordered two consultative examinations, which Earl attended. (Tr. 219-24, 276-79, 290-300)

On September 14, 2007, the ALJ issued a written decision unfavorable to plaintiff and her son. (Tr. 19-32) That decision contains the following enumerated findings:

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated October 24, 2000. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant's medically determinable impairments were ventriculoseptal defect (VSD) with associated congestive heart failure (CHF) and reduced ejection fraction; scoliosis; and vertebral, anal, tracheal, esophageal, and renal (VATER) syndrome that included an imperforate anus and Hirschsprung's disease status post colostomy, a spinal fusion at T10-11, and a fusion at S1-2. These impairments were found to functionally equal listing(s) 104.06H of 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments).

3. Medical improvement occurred as of April 17, 2006 (20 CFR 416.994a(c)).

4. Since April 17, 2006, the impairments that the claimant had at the time of the CPD have not met or medically equaled section 114.06H of the Listing of Impairments as that listing was written at the time of the CPD (20 CFR 416.925 and 416.926).

5. As he was born on August 21, 2000, the claimant was a preschooler on April 17, 2006, but he is currently a school-age child (20 CFR 416.926a(g)(2)).

6. Since April 17, 2006, the impairments that the claimant had at the time of the CPD have not functionally equaled the Listings of Impairments (20 CFR 416.994a(b)(2) and 416.926a and SSR 05-03p).

7. The medical and other evidence establish that the claimant did not have an impairment at the CPD that was not considered at that time and has not developed any additional impairments subsequent to the CPD.

8. Since April 17, 2006, the claimant's "severe" impairments have been an

       imperforate anus and Hirschsprung's disease status post colostomy and a mild speech delay (20 CFR 416.924(c)).

9.     Since April 17, 2006, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments (20 CFR 416.925 and 416.926).

10.    Since April 17, 2006, the claimant has not had an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

11.    The claimant's disability ended as of April 17, 2006, and he has not become disabled again since that date (20 CFR 416.994a).

(Tr. 22, 24, 31)

On November 1, 2007, plaintiff requested review of the ALJ's decision before the SSA's Appeals Council. (Tr. 14) During the pendency of this administrative appeal, on February 20, 2008, plaintiff hired her current attorney to represent her. (Tr. 12-13) On June 19, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 7-9), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Earl Coplen was born with an imperforate anus,[2] a ventricular septal defect,[3] and an abnormal fusion of vertebrae in the lower thoracic spine (Tr. 173). He was subsequently diagnosed with Hirschsprung's disease.[4] (Tr. 195) As he aged, a language deficit also revealed itself, such that Earl qualified for special education services in school. (Tr. 159-69) For purposes of the issues raised on this appeal, <u>infra</u> at 10, only the facts as to the history and functional consequences of Earl's imperforate anus and Hirschsprung's disease are reviewed below.

On the day after his birth, August 22, 2000, Earl underwent colostomy surgery secondary to his imperforate anus, so that stool could be drained from his colon. (Tr. 173, 175) On May 2, 2001, at the age of 8 months, Earl underwent posterior sagittal anorectoplasty (Tr. 240-41), in which a new anal opening was created and joined with the rectum. Some three months later, surgery was performed to close the colostomy. (Tr. 237-39)

On December 30, 2005, when Earl was five years old, he was seen in the Vanderbilt University Pediatric Surgery Clinic for constipation and incontinence. It was noted that Earl was still in pull-ups because of accidents, and was on daily Fleets (rectal)

---

[2] A congenital defect in which the opening to the anus is missing or blocked. http://www.nlm.nih.gov/medlineplus/ency/article/001147.htm

[3] One of the more common congenital heart defects, ventricular septal defect describes one or more holes in the wall that separates the right and left ventricles of the heart. http://www.nlm.nih.gov/medlineplus/ency/article/001099.htm
Plaintiff's ventricular septal defect was surgically corrected on January 17, 2001. (Tr. 250-51)

[4] A congenital condition in which there is blockage of the large intestine due to improper muscle movement in the bowel. http://www.nlm.nih.gov/medlineplus/ency/article/001140.htm

5

enemas. (Tr. 230) Slight rectal narrowing was noted, and plaintiff was to be scheduled for a MACE procedure. (Tr. 231) This surgical procedure, clinically referred to as a laparoscopic appendicostomy, was performed on February 1, 2006, so that plaintiff could treat Earl's chronic constipation with colonic enemas introduced via catheter, through an opening made in his abdominal wall and attached to the tip of his appendix. (Tr. 227-29) On March 10, 2006, no complaints were noted upon followup with regard to the new enema procedure, which was being performed daily. (Tr. 225-26)

It was during this timeframe when Earl was scheduled to be examined for purposes of continuing disability review. A physical examination scheduled for March 2, 2006 was missed, and plaintiff thereafter explained that Earl would need a rescheduled examination because of plaintiff's need for surgery. (Tr. 209) The examination was rescheduled for March 16, 2006, when plaintiff failed to show without explanation. Id. Earl's benefits were subsequently terminated.

Plaintiff's hearing testimony and the paperwork submitted to the agency confirm that Earl remained incontinent and was wearing pull-ups to school at the age of six. Despite his nightly enema treatments, Earl continued to have fecal accidents in his pull-ups during the day with some frequency, resulting in teasing by his classmates and feelings of shame in Earl. (Tr. 157, 304-27)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the

6

correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. Standards Governing Disability Determination

To be eligible for childhood disability benefits during the period applicable to this case, plaintiff must meet the definition of disability set forth at 42 U.S.C. § 1382c(a)(3)(C)(i):

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The Commissioner's regulations implementing this statutory standard are set forth at 20 C.F.R. § 416.924 et seq. The regulations require, at the first step, that the child not have engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(a), (b); see also 42 U.S.C. § 1383c(a)(3)(C)(ii). At the second step, the child will be deemed not disabled if the child does not have a "severe" impairment, i.e., an impairment

7

Case 3:08-cv-00956 Document 35 Filed 03/23/10 Page 7 of 16 PageID #: 315

which causes more than minimal functional limitations. 20 C.F.R. § 416.924(a), (c). If the child has such an impairment, he will be conclusively presumed disabled if he meets the 12-month duration requirement and his impairments are included in, or medically or functionally equivalent in severity to impairments included in, the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.924(a), (d). Accordingly, if the child's impairment(s) does not meet or medically equal a listed impairment, an assessment of whether the impairment(s) is functionally equivalent to a listed impairment is in order. 20 C.F.R. § 416.926a(a). The standards by which the SSA evaluates a child's level of functioning at each step of the process are set out in the regulations at 20 C.F.R. § 416.924a(b). Consideration is given to the child's functional ability in each of the following six broad domains:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and,
6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

Functional equivalence to a listed impairment is established when the evidence shows extreme limitations in one domain of functioning or marked limitations in two domains of functioning. 20 C.F.R. § 416.926a(a). "Marked" is "more than moderate," but "less than extreme"; a marked limitation will be found where the child's impairment

8

"interferes seriously" with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). "Extreme" limitations result when the child's impairment "interferes very seriously" with his ability to independently initiate, sustain, or complete activities; it is the rating which SSA gives to the worst limitations. 20 C.F.R. § 416.926a(e)(3).

In cases such as the one at bar, where a child already receiving benefits is the subject of continuing disability review, the agency adjudicator must first determine whether there has been a medical improvement in the condition or conditions the child had at the time of the most recent favorable determination of disability. 20 C.F.R. § 416.994a(b)(1). If not, it is generally found that the child's disability continues. Id. If there has been a medical improvement, it must then be determined whether the child's impairment or impairments still meet or medically or functionally equal the severity of the listed impairment that the child previously was found to have met or equaled. 20 C.F.R. § 416.994a(b)(2). If the child still meets or equals the listing under which he previously was found disabled, his disability will generally be considered to continue, unless one of the exceptions listing in §416.994a applies.

If the child's condition no longer meets or medically or functionally equals the listed impairment under which the prior finding of disability was rendered, the adjudicator must determine whether the child is currently disabled under the procedure set out above for determining disability in the first instance. 20 C.F.R. § 416.994a(b)(3).

9

C.  Plaintiff's Statement of Errors

In the instant case, plaintiff does not challenge the ALJ's findings regarding the medical improvement of Earl's prior disabling impairment (ventricular septal defect with associated congestive heart failure and reduced ejection fraction), nor the ALJ's findings regarding whether Earl continued to meet or equal the criteria of that impairment.  Rather, the focus of plaintiff's challenge is on the ALJ's development of the record from which the current lack of any listing-level mental or physical impairment was determined.

Plaintiff raises two arguments for reversal of the ALJ's decision, as well as an alternative argument for a sentence six remand to consider new and material evidence.  The first argument advanced is that plaintiff was denied due process when the ALJ decided her claim without first proffering the reports of the post-hearing consultants for plaintiff's review and comment.[5]  Secondly, plaintiff argues that the ALJ failed to fully and fairly develop the record of Earl Coplen's disability when she failed to obtain and review plaintiff's school records or contact his teachers for information regarding his daily functioning.  As further explained below, the undersigned finds merit in this second argument, and would recommend reversal and remand to address these deficiencies, obviating the need to pass on

---

[5]Plaintiff initially argued that this failure by the ALJ was in violation of 20 C.F.R. § 416.1416(f) and interpretive provisions of the agency's internal manual, HALLEX.  As pointed out by defendant, however, § 416.1416 does not apply to proceedings before an ALJ, but to the proceedings surrounding a reconsideration-level disability hearing.

10

plaintiff's constitutional claim.[6]

The ALJ has a "special duty" to fully develop the record of a claimant who appears before her without representation, and the reviewing court must scrutinize the record with care in such cases to ensure that the heightened duty was fulfilled. Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1051-52 (6th Cir. 1983). That duty is all the more luminous in this case, where plaintiff -- notwithstanding her obvious devotion to Earl's care and cause -- was plainly incapable of understanding or advancing her son's best interests within the parameters of the disability adjudication process. Indeed, plaintiff waived or attempted to waive her right to a hearing in this matter on reconsideration and at the ALJ level (Tr. 36, 49, 60), and failed to bring Earl along to the ALJ hearing, where he might have provided some valuable insight into his condition upon gentle questioning by the ALJ. Failing to present Earl at the hearing or address any specific difficulties he may have experienced even when his school day was not interrupted by a fecal accident, plaintiff gave the impression that Earl's school functioning was generally normal. (Tr. 318-19) However, she did testify that Earl followed directions at school only sometimes, explaining that "[h]e gives the teacher a hard time some days when he has bad days at school." (Tr. 313) She went on to testify that Earl's teacher reported he had been doing better "besides the bad days

---

[6] See, e.g., Smith v. Puett, 506 F.Supp. 134, 138 (M.D. Tenn. 1980) ("'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on the questions of constitutionality ... unless such adjudication is unavoidable.'") (citing cases).

11

that he has" (Tr. 314), further clarifying that such "bad days" were days when he would have a fecal accident in his pull-ups. (Tr. 316) Plaintiff testified that Earl's bad days sometimes resulted in her being called to the school to clean him up, and other times his fecal accidents went undetected until plaintiff smelled him after picking him up at the end of the school day. (Tr. 316-17) While it is not clear from plaintiff's testimony how many days per week she was typically called to the school versus how many days an accident went undetected, it is clear that a typical week included at least one occurrence of a fecal accident, resulting in a "bad day" causing Earl shame and difficulty in school. Even the one-time consultant Dr. Varnado observed in 2007 that "[h]e has problems when he has a fecal accident while at school." (Tr. 291)

While it is clear that a claimant may waive her statutory right to counsel, as plaintiff did here, the ALJ's special duty to develop the record required more than her superficial probing into the issue of Earl's school functioning,[7] particularly given plaintiff's testimony regarding "bad days" when Earl "gives the teacher a hard time," as well as her general inarticulateness and the fact that she appeared easily confused with respect to the direction of the ALJ's questions, and with respect to her responsibilities in terms of marshaling the medical and other evidence to support her claim on behalf of Earl. Indeed,

---

[7]The ALJ's entire examination of plaintiff covers less than twelve transcribed pages (Tr. 8-20), and the only questions directed to Earl's functioning at school, amongst his peers, are those inquiring whether plaintiff can study, play and eat with the other children, and generally do the same things as the other children. (Tr. 318-19) Yet, the ALJ largely relied upon plaintiff's failure to describe relevant limitations in her testimony as grounds for finding no significant limitation in the various functional domains considered.

12

the record of hearing in this case would appear to be very similar to the record which compelled a reversal in Lashley, where "the superficial quality of the questioning deprived Lashley of a full and fair hearing." 708 F.2d at 1052-53. The ALJ should have made a deeper inquiry into what behavioral and related functional problems resulted from Earl's "bad days," which appear to have occurred between one and three times per week according to plaintiff's testimony, which the ALJ found credible (Tr. 25).

Compounding this failure to develop the testimonial record is the ALJ's failure to procure and consider the records from Earl's school, which plaintiff's counsel has submitted as an exhibit outside of the administrative record. (Docket Entry No. 25, Exh. A) In response to plaintiff's argument that a full and fair record could not have been developed in the absence of records from Earl's school and reports from his teachers, defendant analyzes the records submitted by plaintiff solely in terms of their eligibility for consideration upon sentence six remand. However, plaintiff clearly challenges the legal sufficiency of the ALJ's decision based on the ALJ's failure to procure the school records, and only seeks sentence six remand in the alternative. (Docket Entry No. 25 at 18-21, 22) The undersigned finds merit in plaintiff's argument for reversal and remand under sentence four of 42 U.S.C. § 405(g), leaving no need to consider the alternative request for remand under sentence six of that statute.

The record contains one evidentiary exhibit obtained from the Metropolitan Nashville Public Schools: a barely legible report dated November 16, 2004, certifying Earl's

13

eligibility for special education based on his language delay, along with the Individualized Education Program ("IEP") plan generated from the interdisciplinary team meeting on that date. (Tr. 159-69) This report was evidently obtained by the state Disability Determination Services ("DDS"), but no further records were obtained by DDS or the ALJ from either the public school system or from Earl's particular school or teachers. The ALJ observed that "[n]o such evidence was submitted about any subsequent academic year." (Tr. 23)

However, "[p]erhaps the most important evidence the SSA 'will' consider in determining the severity of a child's 'functional limitations' are school records, including standardized tests and statements from teachers." Turner v. Barnhart, 377 F.Supp.2d 1165, 1167 (M.D. Ala. 2005). In defining basic considerations for determining disability in children, the regulations provide as follows:

> If you go to school, *we will ask* for information from your teachers and other school personnel about how you are functioning there on a day-to-day basis compared to other children your age who do not have impairments. *We will ask* for any reports that the school may have that show the results of formal testing or that describe any special education instruction or services, including home-based instruction, or any accommodations provided in a regular classroom.
>
> . . .
>
> If you go to school or preschool, *we will ask* your teacher(s) about your performance in your activities throughout your school day. We will consider all the evidence we receive from your school, including teacher questionnaires, teacher checklists, group achievement testing, and report cards.

20 C.F.R. § 416.924a(a)(2)(iii), (b)(7)(ii) (emphasis added). See also 20 C.F.R. § 416.926a(a)(2)

14

Case 3:08-cv-00956   Document 35   Filed 03/23/10   Page 14 of 16 PageID #: 322

(stating that functional equivalence will be assessed by reference to, inter alia, "[h]ow you function in school"). It is thus clear that, especially in the case of a pro se claimant, it is the agency that is tasked with obtaining the relevant school records. In cases such as this, courts have deemed the failure to ensure that the record contains such school documentation a breach of the ALJ's duty to fully and fairly develop the record. See M.J. v. Astrue, 2009 WL 467284, at *7-8 (E.D. Mo. Feb. 24, 2009); Cormier v. Astrue, 2008 WL 3911170, at *10-11 (D. Ariz. Aug. 22, 2008); Encarnacion v. Barnhart, 2003 WL 1344903, at *2 (S.D.N.Y. Mar. 19, 2003); Cespedes v. Barnhart, 2002 WL 1359728, at *5 (S.D.N.Y. June 21, 2002); McClain v. Apfel, 2001 WL 66403, at *10 (S.D.N.Y. Jan. 26, 2001).

In light of this regulatory and judicial authority, the undersigned finds error in the ALJ's failure to obtain and consider plaintiff's school records, a failure which left the record insufficiently developed. It is thus recommended that the case be returned to the agency for further proceedings, including further factual development, a new hearing where plaintiff will have the benefit of her current counsel's representation, and the issuance of a new decision. In light of these recommendations, it is further recommended that plaintiff's pending motion to correct transcript (Docket Entry No. 32) be denied as moot.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be GRANTED, that defendant's motion for judgment on the administrative record be DENIED, that plaintiff's motion to correct transcript be DENIED as moot, and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this report.

Any party has fourteen (14) days from receipt of this Report and

Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 23rd day of March, 2010.

                                             s/ John S. Bryant
                                             JOHN S. BRYANT
                                             UNITED STATES MAGISTRATE JUDGE